Thank you, Mayor. Please, the Court. My name is Dennis Belli. I represent Mr. Haroon. I appeal from his conviction for procuring his naturalization in a manner contrary to law. What at first appears to be a criminal appeal raising garden variety issues has become quite interesting because following Mr. Haroon's conviction, the U.S. Supreme Court issued a pivotal decision, Maslunjack v. United States. But oddly enough, this trial was before our Maslunjack decision, right? Haroon That's correct. Dennis So it's crazy. Haroon It is. Dennis And you even won some arguments on jury instructions that pointed, anticipated things. Maybe not entirely would be your position today. But aren't you the one that urged the instruction about the materiality that said it would have made a fair bit of difference and the U.S. opposed you on that? Haroon Yes, that's correct. Dennis This case is really amusing. It's going every which way. So I guess the fundamental point is why is the instruction that was given here on causation not sufficiently close to the Maslunjack instruction where Justice Kagan is very explicit about this? Haroon Well, that is not our main issue. Dennis Okay, so you agree that that's not the problem here, okay? Haroon Well, we have raised a jury instruction issue and that is actually two issues. And the one that goes to your question, Judge Sutton, we did object to the instruction to the extent that it told the jury with respect to materiality that it does not matter whether the alleged misrepresentation or concealment would more undercuts the other portion of the instruction which seems to be more consistent with Maslunjack because the jury is being told. The government doesn't have to prove that it's more likely than not that Mr. Haroon would have been disqualified from citizenship. Dennis Well, why is that problematic? I mean, isn't the second option under Justice Kagan's position that it would predictably have led to a problem? That didn't seem to suggest she put in front of the jury whether it would have created a problem. Haroon Well, she talks about the investigative phase and she states that the government doesn't have the burden of proving definitively, and I think that's her word, that the defendant would be disqualified. But the evidence must predictably lead to that result. And the testimony that you had here, well, first of all, we have the AUSA in opening statement saying, well, was it a legitimate marriage to the American citizen, Ms. McVeigh? He says, I suppose. That's pretty close to a concession that the government was not prepared to prove it was a sham marriage. Then we have the testimony of the case agent on cross-examination. I asked him those questions and he said, I investigated this as potentially a sham marriage case and I uncovered no evidence to contradict Ms. McVeigh's affidavit that it was a legitimate marriage. And then we have the testimony of the, well, it was also the case agent who said, well, agreed that in the, during the process of getting permanent residency status, that the adjudicator, according to the notes on the application, did this protocol that they follow where they separate the two parties that claim to be husband and wife, ask them questions separately about their routine and all that to verify that they are living together as husband and wife. So our principal position is that this, there's just not enough evidence to satisfy. What about the fact that, you know, Maslund Jack says a lot about this, the possibility of good moral character, which can relate to these statements about whether you've lied in the past. My understanding is there was some oral testimony here, so that satisfies Cungus. What do you do about that problem? There was no oral testimony. I thought, I thought there was. I thought at one point there was. Maybe I'm wrong, just the record says what it says. I thought he was interviewed and he... He was interviewed, yes. And he said that he didn't disclose anything correct about his previous marriages. He reiterated that those statements were true. No, there's no evidence of that. This was purely a paper case. The case agent and the prosecutor were not involved at all in the interview process. And there was some testimony about whether an adjudicator asks any oral questions, but there was, in fact the case agent conceded, or maybe it was the expert, the government's expert conceded that an adjudicator is not required to and isn't going to necessarily go through each question on the application and ask for oral confirmation as to its truthfulness. But in the Supreme Court, though, in that case said that when a legal act is a false statement, that means demonstrating that the defendant lied about the facts that would have mattered to the immigration official, and they'd be just, because they'd be justified in denying naturalization and would predictably have led to other facts warranting that result. So even though it wasn't testimony, it was a false statement that was to an immigration person. And that has certain bearing on this, doesn't it? Well, this Court's decision, under this Court's decision in Maslin, Jackie, you're correct that just making the false statement would be sufficient. But the U.S. Supreme Court rejected that. They said it has to go further. There has to be a causation. There has to be a causal connection between the falsehood or concealment. But some false statements can go to good moral character, which can be themselves disqualifying. Well, the government didn't pursue that. I guess if moving around with some... There's two ways to think about it. It was lurking in the case or it wasn't, depending on the evidence. But then you could also think about it as a harmlessness point. What's the point of retrying this case, given that Maslin, Jack, supports a theory that is very easy to win on? I respectfully disagree. I think that the decision of the Supreme Court makes it very difficult for the government to prove its case. But on top of it all, we don't have a question of whether it would predictably have led to disqualifying facts. We have testimony from government witnesses saying that the issue of the validity of the marriage to an American citizen was investigated, and we found no evidence to indicate that it was. Right, but that wasn't... Yeah, that was before they had the evidence. Go ahead. Well, no. But that isn't even the basis, right? No. Of why there... So I'm not sure I'm following you in response to Judge Sutton's question about the good moral character. Well, under Maslin, Jack, there has to be some indication that a truthful answer would predictably have led to a disqualifying fact. So what is the disqualifying fact here? I'm not... Because he answered after the marriage to McVeigh that he had never been married before, correct? Yes. And that was in order to procure citizenship, right? Not necessarily. The requirement has to be willful. That would have been the end result. Not necessarily, because in the Cungus case, Justice Scalia stated that a false oral statement is not disqualifying if it was made out of reasons of embarrassment, fear, or concerns about privacy. It doesn't seem to apply here. It doesn't seem to apply to this fact. Well, there's no testimony. As I indicated, this is a paper case, and the government simply can't produce no testimony to support its case. They have the burden. And did you say or didn't someone on your side of the case say that it would have raised red flags? Yes, our expert who also was the immigration attorney. So that would go to the element of materiality. Would it have a tendency to cause the government adjudicator to look further into things? But under Maslinjack, that's not enough. There has to be an indication that those concealed facts would predictably have led to a disqualifying fact. And I think the government has to identify what the disqualifying fact is. And other than the validity of the marriage to an American citizen, I don't know what that is. But I mean, lies that are related to the naturalization process that are not designed to avoid embarrassment are it. That's it. You don't get in. That's the way it works. And that's what these lies were. They weren't about embarrassment. That's not remotely possible. They were clearly about hiding the marriage. So this marriage would look legit. I don't see Maslinjack as rejecting that approach. Because? Because you refer it over and over to good moral character as an independent ground that could itself be disqualifying. Right. But to base a lack of good moral character on false statements, there has to be proof that it was oral testimony. And there was no proof of that. So that gets back to your allegation that there was nothing oral here. Well, we'll find out what the government says about that. I get that argument. So our primary argument is there's a lack of sufficient evidence. And if we are correct on that, then there would be no retrial. But we have also raised some trial issues. And one is... So when we think about the lack of sufficient evidence, do we look at that through the prism of the instructions that were given? Normally, yes. Okay. How about this case? Yeah, I think so. Well, that seems right to me. If you're going to try to use it, if you win, for prohibiting retrial, which is the reason that's a good argument. Right? Yes.  The case agent and the adjudicator, they provided oral testimony stating that a false written answer on an application is in and of itself disqualifying. And that simply is not the law. You look at the immigration field manual. You look at even this court's decision in the Massenet case, the U.S. Supreme Court cases, even the Board of Immigration Appeals decisions. They all agree on one thing, that false written responses, even if made under oath, do not qualify as false testimony for purposes of imputing a lack of good moral character. And clearly, the government witnesses told the jury the opposite. We objected. And it's well settled in this court's case law that witnesses cannot instruct the jury on the law. And in fact, Judge Sutton, in the Curlman case, which we've cited, you indicated that So for those reasons, we would ask that the Court reverse Mr. Haroon's conviction. All right. Thank you, Mr. Belli. Mr. Hendy. Good morning. May it please the Court, Mitchell Hendy on behalf of the United States. This case is about lies that go to the heart of the naturalization decision and whether Mr. Haroon was in fact qualified for citizenship. Do the lies matter if they weren't through oral testimony and was there oral testimony? Well, to respond to my colleague's point, yes, there was evidence from which the jury could find that Mr. Haroon did reaffirm the statements under oath during his interviews and thus qualifies as the oral testimony. Both the agents testified that the standard procedures of immigration officials is to walk the interviewee through the application, question by question, and ask them to reaffirm the answers. And the testimony there... So the record will establish this was done orally? I mean, because he kept saying it's a paper case and the suggestion being there's no evidence that shows there was, quote, oral testimony at one stage. And you're saying if we look at these sites, it will prove the opposite? Exactly, Your Honor. The record does show that, both through the testimony of the agents who explained the process. I refer the Court to pages 186, 206, 377, 378. And you're saying that's... So if I remember correctly, the agents testified that this is the ordinary course of how they do things. You have that component, too. But then also in the paper, Exhibit 2, this is Mr. Haroon's application, the I-485, to get green card status. In that paper, you have check marks that show which questions... You can fairly infer are the questions that were asked during the interview. The jury was told about these check marks. The agents testified that that's the practice, that you mark off the questions that are asked. And so this is at page 495 of the record. That's Exhibit 2. You see in his application for a green card, the handwritten marks were in the section asking for all the children. There is no typed entry for his previous child with a Pakistani wife, but instead there are handwritten entries for his stepchildren, the children of Ms. McVeigh. And that's pretty strong evidence that he was asked in his interview for a green card. Whether or not he had any other children, he provided the names of... Is there some case that kind of tells us what counts as the oral testimony? How to think through what that means? I'm not sure if this is exactly... The Ninth Circuit and the Puerta decision in footnote 2 explains that this combination of the standard practices plus the check marks on the exhibit is sufficient evidence to find that is oral testimony. For purposes of 1101F6. That's disqualifying as lack of good moral character. And so what you're saying is this is circumstantial evidence to prove there was an actual oral testimony about these things and the jury could conclude from that there was? Exactly, Your Honor. But, you know, one thing in Mr. Belli's defense or his client's defense, I mean, this isn't the direction any of the parties or the judge or the jury were looking when this case was tried. And, you know, why shouldn't we have a retrial to, you know, have everybody focused on this point? Well, I disagree to the extent... So in closing argument, you were relying on this oral testimony? This case was about good moral character. This case was about the lies... In closing argument, did you refer to this stuff in the oral testimony requirement? We referred... We did not necessarily refer to the oral testimony requirement. Because you didn't think you had to do that. That's correct. Anyway, that's my question. People were not looking in that direction when this case was tried for understandable reasons, given the evolution of the law. So as far as the jury instructions, neither party requested a substantive instruction as to good moral character. Neither party asked the court to instruct the jury as to whether... So what, that they didn't? I'm not surprised at all that they didn't. I think the problem is that you didn't. And that's... If I'm hearing you correctly, that's the alternative ground or way to cure any harmfulness based on what else was done in this case. And yet, maybe I'm not understanding you correctly, but you just said the jury was not asked to look at this question. The jury was asked to consider the lies and whether they... Not in terms of good moral character, though. The closing argument did refer to the fact that Mr. Hearn lacked good moral character. I got it. I got it. But you just said neither party asked for a jury instruction about whether there was a good moral character problem. That doesn't mean anything when it comes to Mr. Belli, because there's no reason he would do that. It's just another reason his client could lose. But if you didn't do it, maybe I'm missing something, but why does that not make it harder to affirm? Well, at the very least, it would be harmless in light of the overwhelming evidence that... I got that. And what the jury must necessarily have found. And that goes back to the procurement instruction actually given here. And that is that the government was held to prove that it's a fair inference the defendant was actually ineligible for naturalization. And I'd argue that's a higher standard than the Maislin-Jack standard announced this summer. Did the government have to prove or demonstrate that Mr. Haroun's previous marriage and the children by that marriage were in and of themselves disqualified? Is that something that you had to specifically prove? No, Your Honor, in that it's true that an applicant can have a prior marriage, can have children of a prior marriage and still be eligible. It's the fact that he lied about that marriage and prior children in earlier immigration phases. And this is from the concluding paragraphs of the Maislin-Jack decision where Justice Kagan makes clear that fact alone, that prior dishonesty could qualify as false testimony precluding good moral character. That's enough. Whether he affirmatively made the statement or whether he omitted it in the face of a question that properly elicited that information. It would be the same, is that correct? I think it would be the same, yes. And in this case, there's both. There's evidence from which you can infer both. But on the sufficiency ground, there's the other avenue, this reasonable investigation. And that is that had this information come to light during the naturalization phase, the testimony shows that there would have been red flags, both the immigration attorney and our agents testified that they would have looked closer, that they would have investigated the bona fide character of the marriage. So that was my next question. So this predictably would have led to this, and the this is it was a sham marriage? There's certainly evidence to support that. I'd like to correct the record. But I'm asking, is that the theory? Is that the harmlessness theory, that under Maislin-Jack had you instructed precisely the way they talked about it, what would have happened had this been disclosed? Is it predictably would have led to a finding that this was not a real marriage? Is that the idea? It's one of two. It would have predictably led to a finding that there was not a real marriage, or it would have predictably led to the finding that there was oral testimony sufficient to establish 1101F6 and preclude him from demonstrating good moral character. And to correct the record as to the bona fide nature of the marriage, counsel for the government below did not suggest, or it did not concede that this was a legitimate marriage. In opening statement, the full quote was, whether the marriage was legitimate? Possibly, I suppose. Meaning the government didn't have to prove that. And that's still the case after Maislin-Jack under the first theory. The testimony shows, had these misrepresentations been brought to light, certainly there would have been more. The government didn't have any evidence it was a sham marriage, right, other than the unique circumstances of the timing of everything. Because she, I thought, provided an affidavit, and I thought the government said they hadn't found any reason to discount that. It's true the wife provided an affidavit. However, both parties, one party can enter a marriage legitimately, and another party can enter in order to evade immigration laws. I understand that, but there's no evidence of that right now. Apart from the circumstantial evidence and all the timing, the fact that he brought his ex-wife and their kids over shortly after receiving naturalization, apart from that, there's no further, it wasn't further developed. Your point is, had he disclosed it all, would have been given reason to investigate. Absolutely. So do you agree with Mr. Belli that the sufficiency question is gauged by us through the prism of the instructions actually given, as opposed to what might be proper instructions? Well, the government views the fair inference test given as actually more demanding than this predictably disclosed, and in which case... Okay, but let's just forget that. Let's say you're wrong about that. He wants a sufficiency argument, and he wants that because if he wins, there's no retrial. Right? Double jeopardy and all that. But is that the right way to look at it? Do we gauge it through the instructions given, or do we gauge it through what we perceive as the law? So the reason I started with the difference in test is the Musacchio opinion from the Supreme Court says that when a jury is instructed about an erroneous additional element, you evaluate sufficiency through the correct law. And so under that standard, the court should review under a Mace-Lynch Act... Do you disagree with him that we look at it through the lens of the instructions actually given? Yes, Your Honor. Because the fair inference test is more demanding. And so the jury was asked to find something even more strenuous than what Mace-Lynch... You're saying if a crime requires four elements and a judge adds five, we look on review just at the four elements and make sure they were proven? Yes, Your Honor. And so it would be odd here to take instructions that may not be 100% accurate and review the sufficiency when we have Maslin-Jack now. Yes, Your Honor. And as to the issue with the agent's testimony, the evidentiary... Before you get to that, just Maslin-Jack, what's your preferred theory? I know you said you think they were asked to do more than they needed to do. I'm not sure I agree or not. I don't know. It's hard for me to figure that out. But what I do know is Maslin-Jack identifies falsities or problems that were themselves disqualifying and predictably would have led... Which basket? Do you think it fits in both baskets or one basket preferably? It does fit in both. The first is through the good moral character lens and that there is sufficient evidence to show that the lies in order to obtain a green card qualified as false testimony for purposes of an immigration benefit, that falls under 8 U.S.C. 1101 F6, that creates a statutory bar. Could we look at the good moral character since an instruction wasn't given using the neater harmlessness standard? Or what standard would we use since... Well, the jury was instructed that part of this was the elements of naturalization, which include good moral character. And it was also instructed that the government had to prove there was a fair inference he was actually ineligible. And so one path for ineligibility is the lack of good moral character. Earlier you said there wasn't an instruction about good moral character. Maybe I'm not understanding what you meant. The court didn't get into the weeds. The instruction was there are these elements for naturalization, quoting some of the elements of 1427, the lawful permanent resident. Are you just saying that he didn't give them a specific instruction and define good moral character? He didn't. Exactly, Your Honor. He didn't elaborate on good moral character, this oral versus written. But there was testimony. The agents testified and were presented with the statute and the regulations and explained, you know, we apply these regulations, and if an applicant lies, that's disqualifying under good moral character. But it proves, it's confirmation that it wasn't your theory, because if it were your theory, you would have asked for an instruction about it being oral, because you would have known that that was required. It's required that the government demonstrate a fair inference. At trial, the government demonstrated a fair inference he was ineligible, and that good moral character is a required element of that. The government didn't seek to get into the weeds. There was testimony from which the agents said good moral character means this. This is how I apply good moral character. The court instructed that good moral character is an element. Now, I'm sorry. Let me ask you, how critical is your theory to the determination that we've got to make? Because we've talked about your theory, the government's theory, pardon me, whether or not this was or that wasn't. How critical is that? I'm not quite sure what you mean by that. Well, I mean, Judge Sutton just got to asking you about whether it was or was not your theory on a particular point, and I'm just asking with respect to whether or not you had an articulated theory of the case then that maybe didn't surface, how critical is that to the determination we've got to make, if at all? Well, I think that the record demonstrates that there's sufficient evidence. I think what Judge Donald's saying is, you know, you've said some things and there's some instructions that went to good moral character, but that wasn't the focus of the case, and that's what we're struggling with in terms of harmlessness. I would disagree again that the focus of the case. The government was focused on proving that Mr. Haroun was ineligible for lack of good moral character and that these lies, had they been disclosed, the agents said they would have denied his application. Now, there wasn't, the defense did object and argue to the district court judge that this oral versus written, but didn't seek a clarifying instruction from what the agents testified to. The agents explained what they would have done in the circumstances. I interrupted you earlier. You wanted to get to one thing, but now it's... I see, it was on the same point of the agent's testimony. The objection below was that they called for a legal conclusion. The Monis case from this court says witnesses are able to testify to the legal consequences of a defendant's actions, and in any event, the testimony was harmless. All right, thank you, Mr. Handy. We appreciate it. Mr. Belay, you've got your bottle. Well, I'd urge the court to look at the case of U.S. versus Alforin. Now, it's from another circuit, but it dealt with the very same type of... U.S. versus what? Alforherin. It's cited in the brief, A-L-F-E-R-H-A-R-N, I think. And it dealt with the situation where the defendant concealed a prior marriage, and I think it was the Ninth Circuit. It's pre-Maslinjic, but they applied generally the same line of reasoning there. Can I ask you about the oral testimony? Because the government's position is that the check marks plus the circuit testimony of what they ordinarily do is circumstantial evidence that there was oral testimony. Why isn't that sufficient? Because it's not even sufficient in immigration cases. Page 18 of our brief, we cite a Board of Immigration Appeals. We apply our standard, which is why isn't that circumstantial evidence from which a jury could conclude, viewing the evidence in light most favorable to the government, that there was oral testimony? Because the witness conceded that not every adjudicator does his job the same way. And I'd also point to a question I asked the case agent. So we do not know whether the adjudicator asked Mr. Haroon any questions regarding prior marriages and children, correct? Answer, I believe that's correct, if there was any. If there was any questions. I mean, this is the government's witness. So, you know, our position is that because of the double jeopardy protections of the Constitution, there's no do-overs. I mean, this is not supposed to be an exercise that the government now sees what maybe it didn't pursue aggressively and let's give them another chance. Our position is that the testimony of the government's witnesses established that disclosure of truthful information would not have predictably led to disqualifying facts. There's only so many disqualifying facts, such as a prior felony conviction, that can disqualify somebody from citizenship. They just fail to show it. And I don't think they should be entitled to a do-over. Okay. Thanks to both of you for your helpful arguments and briefs. We appreciate it. The case will be submitted and the clerk may call the last.